# 𝔖taunton.

## BELCHER v. GOFF BROTHERS.

### September 23, 1926.

1. APPEAL AND ERROR—*Assignment of Error—Admission and Rejection of Evidence—Instructions.*—Where it was admitted in a petition for 'a writ of error that, if all the rulings on the admission and rejection of evidence had been favorable to the plaintiff in error, no other verdict could have been found under the instructions of the court, this left the case to stand or fall on the instructions.

2. SALES—*Kerosene or Coal Oil—Implied Warranty.*—Kerosene, or coal oil, is a well known, well defined, article of merchandise, to which the rule *caveat emptor* applies. There is no implied warranty against hidden defects.

3. SALES—*Kerosene Oil—Explosions—Oil mixed with Gasoline—Action against Seller for Injury—Instructions—Case at Bar.*—In the instant case, an action against a seller of kerosene oil by the buyer for injury from an explosion, if the seller had known, before the sale to the plaintiff, that the kerosene was mixed with gasoline, and failed to disclose it, and that was the proximate cause of the injury to the plaintiff, without negligence on her part, then the defendants would have been liable. But the evidence did not support that conclusion, and the instructions tendered by the plaintiff were fatally defective in failing to state that the defendants knowingly sold to the plaintiff a mixture of gasoline and coal oil, or gasoline for coal oil.

4. SALES—*Coal Oil—Explosion—Liability of Retail Dealer—Case at Bar.*—In the instant case, an action against sellers of kerosene oil by the buyer for injury from an explosion, defendants had been buying their coal oil for several years from an oil company and there had never been the slightest complaint of it. They had found by experience that this oil company was a reliable dealer. The oil in question was purchased in the usual course of trade, and, in the absence of evidence to the contrary, they had the right to believe that the oil was of the standard quality. The testimony relied on by the plaintiff to show notice to the defendants of latent defects in the oil did not show such notice prior to the sale to the plaintiff, which was necessary to entitle her to recover, and the defendants denied such notice.

*Held:* That plaintiff could not recover.

5. SALES—*Implied Warranty of Fitness for a Particular Purpose.*—If a specific article or one known, defined and described, is ordered and furnished, there is no implied warranty of fitness for a particular purpose, although the seller is informed of such purpose, for the reason that an undertaking is not implied when the buyer gets what he bargains for.

6. SALES—*Latent Defects.*—Where a vendor is not the manufacturer and the purchaser knows this fact, the former is not responsible for latent defects in the absence of proof of an express warranty, or of fraud and deceit upon the part of the seller.

7. SALES—*Kerosene Oil—Explosion—Oil Mixed with Gasoline—Instructions.*— In an action by the buyer of kerosene oil against the seller for injury resulting from an explosion, at defendants' request, the court instructed the jury that if defendants purchased the oil in the due and usual course of trade for kerosene oil and there was nothing in the purchase, sale and shipment of the oil to put the defendants upon notice as to whether or not such oil contained a mixture of gasoline, no negligence could be attributed to the defendants. The jury had before them all of the evidence on the subject of notice and the consideration thereof was not taken from them by any instruction.

    *Held:* That while this instruction was defective in not negativing notice from any other source than that stated in the instruction, the defect was not of so serious a nature as to require a reversal.

8. NEGLIGENCE—*Contributory Negligence—Primary Negligence not Established—Instructions.*—Where the primary negligence of defendant is not established by the evidence it is immaterial whether or not the plaintiff was guilty of contributory negligence or what instructions were given on that subject.

Error to a judgment of the Circuit Court of Buchanan county, in an action of trespass on the case. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Clevinger & Smith; Chase, McCoy & Rose,* for the plaintiff in error.

*A. A. Skeen, W. A. Daugherty,* for the defendants in error.

BURKS, J., delivered the opinion of the court.

There are five assignments of error. The first is because the verdict is contrary to the evidence. This need not be considered as the evidence is abundant to support the verdict. The fourth and fifth are to the rulings on the admission and rejection of evidence. It is admitted in the petition for the writ of error that, if all of these rulings had been favorable to the plaintiff in error, no other verdict could have been found under the instructions of the court. This leaves the case to stand or fall on the instructions.

At the time of the injury complained of, and for some time prior thereto, Goff Bros. conducted a mercantile business at Grundy, in Buchanan county. They carried the articles usually carried in a country store, including kerosene or coal oil. They never at any time carried or sold gasoline. They had for several years bought this oil from High Grade Oil Company, of Williamson, West Virginia, of whom the oil in question was purchased, and never at any time prior to the injury complained of had any complaint been made of the character of the oil. They usually bought two drums of fifty-five gallons each every month, and emptied them together in their oil tank from which their customers were served. Shortly before the accident, they purchased two drums and emptied them into their tank as aforesaid. They had sold only forty-four gallons of it at the time of the injury complained of.

On May 17th or 18th, plaintiff bought of the defendants a gallon of this oil, filled her lamps with it, and used them for several nights without observing any unusual results. On the morning of May 22, 1923, the plaintiff's husband put wood and coal in the kitchen stove, poured some of the oil on it, ignited it and went back to bed. About half an hour afterwards the

plaintiff got up and found that the fire was not burning. She says she examined the stove and found that there was no fire in it. Thereupon she put wood in the end door of the stove, leaving the ends of the wood sticking out, and commenced pouring oil from the can on the ends of the sticks, when there was an explosion, setting her on fire, and causing her very serious injury.

There was much evidence tending to show that there was gasoline mixed with the oil, but, save as hereinafter noted, there was no evidence tending to show that, prior to the sale to the plaintiff, the defendants had any intimation of any trouble about the oil, or that it was not in every respect what it purported to be. After the injury, there was the usual neighborhood talk about it, and different witnesses testified to their experience with the use of the oil, but these facts were not communicated to the defendants prior to the sale to the plaintiff.

The only eyewitnesses to the explosion and what immediately preceded it were the plaintiff and her husband. The husband testified: "I got up and started a fire, or at least I thought I had started it." On cross-examination and re-examination in chief, he testified as follows:

"Q. Mr. Belcher, when you built a fire the morning your wife got burned, tell the jury what you did and what you put in the stove?

"A. I put wood and coal and oil.

"Q. Did you use the same can your wife used?

"A. I reckon so.

"Q. Did you pour oil in at the top of the stove?

"A. Yes, sir.

"Q. Did you leave the fire burning when you went back to bed?

"A. Yes, sir; I thought so.

### Re-Direct Examination.

"Q. When you put the match to it what did it do?

"A. It flashed, apparently quicker than lamp oil had been doing."

The plaintiff testified that her husband got up to build a fire in the cook stove, and, after starting it, went back to bed; that about half an hour thereafter she got up and couldn't hear the fire burning; that she "went to the stove and took the top off and looked in" and did not see any fire; that she picked up three or four sticks of wood and put them in the stove, at the side doòr, and left the ends sticking out so that she could pour oil on them; that she picked up the oil can and went to pour oil on the ends of the sticks of wood, holding the can about two inches above the wood; that she did not think any oil had touched the wood, when there was an explosion and she was badly burned from her waist up; that the explosion occurred on May 22; that the oil was purchased May 17 or 18; that two "tolerably large" lamps in the house, which were used for lighting, had been filled from the oil can on May 17 or 18, and had been used every night thereafter before the explosion. In describing her investigation as to fire in the stove, she states: "When I got up I didn't take time to put on my clothes—I couldn't hear the fire burning and I didn't think it was doing any good, and I went in, but couldn't see any fire." She further testified that on the morning she was burned, one of the defendants came to see her and "I was telling him about building the fire, and he said there was gasoline in that oil, or I would not have gotten burned."

John Ratliff testified that before the plaintiff was burned he called for some kerosene oil and Mr. Goff

told him they had some but they thought it was mixed with gasoline, and consequently he did not buy it. The cross-examination of this witness renders it uncertain whether the conversation he relates took place before or after the plaintiff was burned. At all events he nowhere states that it was before the sale of the oil to the plaintiff. Arthur Goff, with whom it is alleged the conversation took place, testified that he did not make any such statement.

The statement alleged to have been made by one of the defendants to the plaintiff immediately after the injury, if made, was clearly the mere expression of an opinion rather than the statement of a fact. The statement was denied by the defendant.

Upon substantially this testimony, instructions were asked by both sides. The court refused four of those offered by the plaintiff and gave six offered by the defendants. They are copied in the margin.*

Two questions were presented for consideration:

*PLAINTIFF'S INSTRUCTIONS REFUSED.

II. "The court instructs the jury that if they believe from the evidence, by a preponderance thereof, that the defendants sold the plaintiff a mixture of gasoline and lamp oil for lamp oil, and that the plaintiff was injured thereby, as alleged in the declaration, the defendants are liable regardless of whether or not the said defendants knew that the oil sold was part gasoline.

III. "The court instructs the jury that a seller of an article dangerous in its nature, or likely to become so in the course of the ordinary usage to be contemplated by the seller, that the seller must exercise due care to warn users of the danger of said article, and if the jury believes by a preponderance of the evidence that the defendants sold the plaintiff gasoline, leading the plaintiff to believe they were selling the plaintiff kerosene oil, or what is commonly called lamp oil, and that the plaintiff was injured as alleged in the declaration, you should find for the plaintiff, and assess her damages at such amount as you think she is entitled to recover, so that the same does not exceed the sum of $10,000.00, the amount claimed in the declaration.

IV. "The court instructs the jury that the seller of an article warrants that the article sold is safe for use for the purposes for which said article is sold, and the court further tells the jury that the defendants are charged with notice of the qualities of the article sold by them, and if the jury believes by

(1)   Were the defendants negligent, and (2) if so, was the plaintiff guilty of negligence proximately contributing to her injury?   The plaintiff's instructions which were refused wholly ignored the second question, and incorrectly stated the law in answer to the first.

[1, 2, 3] Kerosene, or coal oil, is a well known, well defined, article of merchandise, to which the rule *caveat emptor* applies.   There is no implied warranty against hidden defects.   If the seller had known, before the sale to the plaintiff, that the kerosene was mixed with gasoline, and failed to disclose it, and that was the proximate cause of the injury to the plaintiff, without negligence on her part, then the defendants would have been liable.   But the evidence does not support that conclusion, and the instructions tendered by the plaintiff were fatally defective in failing to state that the defendants *knowingly* sold to the plaintiff a mixture of gasoline and coal oil, or gasoline for coal oil.

the preponderance of evidence that the defendants sold a mixture of gasoline and kerosene oil for kerosene, without warning the plaintiff that said oil contained gasoline, and the said plaintiff by using the said mixture in the customary way in which kerosene is used, was injured as alleged in the declaration, they should find for the plaintiff, and assess her damages as such as they think she is entitled to, so the same shall not exceed $10,000.00, the amount claimed in the declaration.

V.   "The jury are instructed that there is no legal limit to the damages they may allow for personal injuries, and that they are the judges of the extent of the damages to which from the evidence the plaintiff may be entitled to recover; and in estimating such damages they may take into consideration her age, her station in life, her injury, pain, her physical and mental suffering arising from said injury, her loss by having been prevented by said injuries from doing her work, but said damages must not exceed $10,000.00, the amount in the declaration mentioned.

"The court further instructs the jury that if they should find for the plaintiff, they should, in assessing her damages, take into consideration the expense in medical and hospital bills expended by her."

DEFENDANTS' INSTRUCTIONS GRANTED.

I.   "The court instructs the jury that the burden of proving negligence is upon the plaintiff, and that negligence must be proved by affirmative evi-

[4] The defendants had been buying their coal oil for several years from the High Grade Oil Company, of Williamson, West Virginia, and there had never been the slightest complaint of it. They had thus found by experience that the High Grade Oil Company was a reliable dealer. The oil was purchased in the usual course of trade, and, in the absence of evidence to the contrary, they had the right to believe that the oil was of the standard quality. The testimony relied on by the plaintiff to show notice to the defendants of latent defects in the oil does not show such notice *prior to the sale to the plaintiff*, which was necessary to entitle her to recover, and the defendants denied such notice. The testimony clearly shows that the defendants ceased the sale to their customers as soon as they learned of the suspicious character of the oil. They sold the remainder thereof in bulk to a customer with full notice of what had been said of the oil.

[5] If "a specific article or one known, defined and

dence, which must show more than a probability of a negligent act; that a verdict cannot be found upon a mere conjecture; and that there must be affirmative and preponderating proof that the injury to the plaintiff would not have occurred except through the negligence of the defendant as charged in the declaration.

II.  "The court instructs the jury that if they shall believe and find from the evidence in this case that the defendants purchased the oil, sold to the plaintiff or the plaintiff's family, in the due and usual course of trade for kerosene oil, and that in the purchase, sale and shipment of said oil to them there was nothing to put the defendants upon notice as to whether or not such oil contained a mixture of gasoline, then no negligence can be attributed to the defendants in the sale to the plaintiff of said oil, and the jury shall find for the defendants.

III.  "The court further instructs the jury that if they shall believe and find from the evidence in this case that the plaintiff negligently poured oil on fire, thereby causing said oil to ignite and explode and that the plaintiff, by reason thereof, received the injuries complained of, the jury shall find for the defendants.

IV.  "The court instructs the jury that if they believe from the evidence that at the time the plaintiff received the injuries complained of she was attempting to kindle a fire by pouring oil into a stove, in which there was fire

described, is ordered and furnished, there is no implied warranty of fitness for a particular purpose, although the seller is informed of such purpose, for the reason that an undertaking is not implied when the buyer gets what he bargains for." 35 Cyc. 400-401.

[6] "Where a vendor is not the manufacturer and the purchaser knows this fact, the former is not responsible for latent defects in the absence of proof of an express warranty, or of fraud and deceit upon the part of the seller." 15 Am. & Eng. Ency. L., (2d ed.) 1236-7.

In *Mason* v. *Chappell*, 15 Gratt. (56 Va.) 572, the defendant purchased of the plaintiff, the manufacturer, a given quantity of "Chappell fertilizer," which was delivered to the defendant. When sued for the price, he defended on the ground that it was "unfit for the purpose for which it was sold and delivered." Robertson, J., speaking for the court, said: "It is well settled law, in this State, that in a sale of personal chattels a full price does not import a warranty as to quality. The vendor is not liable for defects in quality unless he warrants, or makes some fraudulent representation, or, knowing of a latent defect, omits to disclose it.

\* \* \*

_____

at the time, and that this act resulted in her injury, then this in law constitutes such contributory negligence as bars her right of recovery in this case, and the jury shall find for the defendants.

V. "The court instructs the jury that if they believe from the evidence that at the time the plaintiff received her injuries she was pouring oil in stove in attempt to start fire, and fire had been started in said stove short time previously, and that this resulted in an explosion that caused her injury, then this act upon her part constituted such contributory negligence upon her part as bars her right of recovery whether said oil was kerosene or gasoline.

VI. "The court tells the jury that if they believe from the evidence that the plaintiff is guilty of negligence upon her part which contributed to her injury or which proximately caused or helped to cause her injury then this in law bars her right of recovery regardless of any act or omission of the defendants."

"If an order is given for an undescribed, unascertained thing, stated to be for a particular purpose, the vendor will be held liable, unless it answers, in a reasonable degree, the purpose for which it was purchased. But where a specific article is ordered and furnished, the law is well settled that although the purchaser states the purpose to which he intends to apply it, there is no implied warranty on the part of the vendor that it is suitable for the purpose; and he will not, in the absence of fraud, or an express warranty, be held liable, however unfit it may turn out to be. *Chanter* v. *Hopkins*, 4 Mess. & Welb. 399; *Olivant* v. *Bailey*, 48 Eng. C. L. R. 287; *Prideaux* v. *Bunnett*, 87 Eng. C. L. R. 613."

In *Evans* v. *Lawry*, 67 N. J. L. 153, 50 Atl. 355, it is said: "The rule is well settled that when an article is sold by description, by its known designation, and the purchaser has an opportunity for inspection, the only warranty which is implied by the sale is that the thing sold is of the kind specified. Where the buyer has no opportunity to inspect, there is, in addition to the implied warranty that the article is of the kind specified, a further warranty by implication that it is salable or merchantable. But unless it is expressed in the contract, there is no warranty that the article is of any particular quality, and this is the case whether an opportunity for inspection be afforded the vendee or not. The cement which was the subject matter of the sale in the present case was purchased by its known designation, that is, 'Atlas Portland Cement,' and, consequently, there is no implied warranty of its quality."

To the same effect, see *Hyati* v. *Boyle*, 5 Gill & J., 25 Am. Dec. 276; *Peoria Grape Sugar Co.* v. *Turney*, 175 Ill. 631, 51 N. E. 587; Note 102 Am. St. Rep.

607; 24 R. C. L., p. 179, sec. 452, and cases cited; *Court* v. *Snyder*, 2 Ind. App. 440, 50 Am. St. Rep. 247 and note.

In the instant case, what was ordered was kerosene oil, and what was furnished was what was purchased of a reliable manufacturer or dealer as kerosene oil, and there was no implied warranty against latent defects.

[7] Instruction II, given for the defendants, was defective in not negativing notice from any other source than that stated in the instruction, but the defect is not of so serious a nature as to require a reversal on that account. The jury had before them all of the evidence on the subject of notice, and the consideration thereof was not taken from them by any instruction given.

[8] We are of opinion that the trial court committed no error in refusing the plaintiff's instructions; that the primary negligence of the defendants has not been established by the evidence, and hence it is immaterial whether or not the plaintiff was guilty of contributory negligence, or what instructions were given on that subject.

There is no error in the judgment of the trial court.

*Affirmed.*