## Richmond.

## Universal Motor Company, Inc. v. T. N. Snow.

### December 22, 1927.

1. Appeal and Error—*Exceptions, Bill of—Exceptions to Instructions—Grounds of Exceptions not Stated—Rule 22 of the Supreme Court of Appeals—Case at Bar.*—In the instant case plaintiff excepted to two instructions given by the trial court. The instructions each purporting to state an abstract principal relative to implied warranties, were rather too tersely and inadequately expressed. In the plaintiff's two bills of exception in this connection no grounds of objection were stated, and nothing was certified beyond the objection and exception.

   *Held:* That under Rule 22 of the Supreme Court of Appeals the appellate court could not consider the scope and phraseology of these two instructions, but was confined to the general question, whether the evidence justified any instruction on implied warranty.

2. Appeal and Error—*Implied Warranty—Finding of Jury that there was an Implied Warranty—Sufficiency of Evidence to Support Verdict—Case at Bar.*—In the instant case the question at issue was whether or not there was an implied warranty. The jury found that there was an implied warranty.

   *Held:* That on appeal the question before the appellate court was whether there was sufficient evidence before the jury to justify their verdict.

3. Implied Warranty—*Fitness for Particular Purpose—Sale of Standard Article.*—As a general rule, a sale in the usual course of trade of a specific standard article dealt in on the market does not import a warranty of quality, nor a warranty of fitness for a particular purpose, although or merely because the seller is informed of such purpose.

4. Implied Warranty—*Fitness for Particular Purpose—Buyer Trusting to Seller's Judgment or Skill.*—When a manufacturer or a dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied; for in such case

the buyer trusts to the manufacturer or dealer, and relies upon his judgment and not upon his own.

5. SALES—*Caveat Emptor—Warranty.*—While the maxim *caveat emptor* applies generally to the sale of chattels by description, yet it does not apply where there is either an express warranty or a warranty implied from the nature and circumstances.

6. SALES—*Implied Warranty—Fitness for Particular Purpose—Case at Bar.*—In the instant case, an action for breach of contract of sale by the seller against the buyer, the jury found for the defendant. It was beyond dispute that the jury might have justly inferred that the buyer stated his needs to the seller; that the seller knew what they were and sold the mill to suit the character of business conducted by the purchaser, that is the production and sale of table meal; that the buyer was ignorant of the fitness of the mill for this particular purpose; that seller represented himself as knowing that the mill would fulfill the purpose for which the buyer desired it, and that in making the purchase the buyer justifiably relied upon the superior information, skill and judgment of the seller, and not at all upon his own knowledge or judgment.

*Held:* That under these circumstances an implied warranty of fitness was properly claimed by the purchaser.

Error to a judgment of the Circuit Court of Halifax county in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*William M. Tuck*, for the plaintiff in error.

*McKinney & Settle*, for the defendant in error.

CRUMP, P., delivered the opinion of the court.

The Universal Motor Company, with its chief office in Richmond, sold to T. N. Snow, through its salesman, H. W. George, a mill for grinding grain known as a Jay Bee Mill. This mill was to be substituted for an

ordinary burr mill then in use by Snow. The order given for the mill, dated July 14, 1924, was as follows:

"Sold to T. N. Snow
  "City Lennig, P. O.        State Va.
    "Ship Via N. & W.
"This order subject to the approval of our Richmond, Virginia, office.

| "Quantity | Description | Amount |
|---|---|---|
| "1 | No. 2 Standard 'J. B.' Crusher, Grinder & Pulverizer, Complete, with fan, 25 discharge pipe, *purtin* Dust Collector & screen 1/20, extra screwa 1/4 & 9/16 . . | $870.43 |

"Reference
"Bank of Clover Va.
"International Harvester Co. O. K. Good
        "Rich, Va.
  "Sales Corp. Co. Rich, Va. O. K.
  1/3 cash with mill, and bal in two notes, 1st due July 1st, & last note Oct. 1st 1924 with 6% interest . . . . . . . . . . . . . $870.43
          "T. N. Snow,
            "Buyer.

"H. W. George
  "Salesman."

The mill was subsequently shipped and installed, and Snow made the cash payment and gave his two notes for the balance. Snow paid the first note, and upon his failure and refusal to pay the second note the motor company brought an action, by notice of motion for judgment, to enforce its payment. Snow filed a special plea of set-off, in which he claimed a breach of warranty attending the sale, and alleged that the mill was valueless to him for the purposes which it was warranted to fulfill, that he had offered to return it,

and that he was entitled to a judgment against the plaintiff for so much of the purchase money as he had paid. Upon the trial verdict for $669.85 was returned in favor of the defendant Snow, upon which judgment was entered against the company, whereupon it appealed.

There are three assignments of error, but they all relate to the action of the trial court in ruling, upon instructions and upon a motion to set aside the verdict, that the evidence was sufficient to support the finding that an implied warranty of fitness for special purposes accompanied the sale.

The purchaser, Snow, testified that he had been conducting a profitable milling business in Halifax county for fifteen or eighteen years; he wrote to the manufacturers of the "J. B." mill and they referred him to the Universal Motor Company, as the dealer handling the mills in this territory; the Universal Motor Company wrote him that this mill would not only grind grain for feed, but would grind corn and make meal of a high quality and fit for table use; the agent, George, came along two or three months after this, having with him a small sample mill; the agent demonstrated grinding with the little sample mill, and Snow told George he wanted the mill only for grinding meal for table use for his customers and for no other purpose, and it was thoroughly understood between himself and the agent, George, that he wanted the mill for grinding meal of a quality fit for table use, and George represented many times that it would make such meal; that he, Snow, had no experience with these mills before the sale of one to him, nor had he ever seen the mill; that he relied on the motor company to deliver him a mill which would grind table meal for his customers, and do what the company stated in its letter to him; and

what its agent, George, said it would do when sold to him; that plaintiff knew at the time of the sale that Snow had been engaged in the milling business for years and had a mill business, and that he purchased the mill to grind table meal only and with which to replace his old mill.

The defendant Snow further testified at length as to his experience with the mill, its inability to grind meal fit for table use, the loss of customers on that account, and the damage to his business; several other witnesses likewise testified concerning these matters.

The agent, George, was a witness on behalf of the company. He testified he and his company knew at the time of the sale to Snow, and prior thereto, that he was purchasing the mill for the purpose of grinding meal for his customers for table use, and when he sold it to Snow he represented to him that it would grind meal for table use, but not that it would produce such meal at the rate of twenty bushels an hour; that after Snow began to complain about the failure of the mill to make meal fit for table use, he went to Halifax county to see him, but he never went to the mill nor inspected it, and had never seen the mill in action after he sold it; that he had sold a large number of the mills and they had given general satisfaction. The only other witness for plaintiff was the sales manager of the company, who stated he had sold many mills and they had given general satisfaction; he had never seen the mill sold to Snow and did not know whether it would make meal fit for table use or not; that "the plaintiff knew that Snow purchased the mill in question for the purpose of grinding table meal for his customers, and that the mill was sold for such purpose."

[1] At the conclusion of the evidence the court gave

two instructions, one at the request of each of the parties.

One instruction offered by the plaintiff was refused. The plaintiff excepted to the instruction given for the defendant and to the ruling of the court rejecting the instruction offered by it. Both of these instructions, each purporting to state an abstract principle of the law of sales relative to implied warranties, are rather too tersely and inadequately expressed. In the plaintiff's two bills of exception in this connection no grounds of objection are stated, and nothing is certified beyond the objection and exception. Under Rule 22 of the Supreme Court of Appeals, we cannot consider the scope and phraseology of these two instructions, but are confined to the general question, whether the evidence justified any instruction on implied warranty. *Kelly* v. *Schneller*, 148 Va. 573, 139 S. E. 275. In fact, the whole question at issue on this appeal is, as stated in the petition for writ of error, "whether or not under the circumstances in this case there is an implied warranty."

[2] The jury having found that there was an implied warranty, the question resolves itself further into determining whether there was sufficient evidence before the jury to justify their verdict.

Where the buyer purchases the goods for a particular purpose a warranty is sometimes implied that the goods shall be fit for that purpose. If the seller contracts to furnish goods for a specified object, it is often proper on a construction of the contract itself to hold that he has agreed to furnish something that will accomplish the object desired. If, however, the bargain relates to specified goods, it is obviously an implication of law, if the seller is held to warrant the fitness of an article for the purpose designated. These general

principles are stated in 1 Williston on Sales (2nd ed.) sec. 235. After discussing the warranty of merchantability, the author there continues:

"Sometimes, however, a more extensive warranty exists by implication. The manufacturer, and in some jurisdictions the dealer, is held to warrant not simply that the goods he sells are fit for the general purpose for which they are manufactured or usually sold, but are also fit for some special purpose of the buyers which will not be satisfied by mere fitness for the general purpose goods of that sort fulfill. The test here, as elsewhere, is whether the buyer justifiably relied upon the seller's judgment to furnish something which would fulfill the desired purpose, or whether relying on his own judgment the buyer ordered or bought what is frequently called 'a known described and definite article.' In the cases cited below it was held that a manufacturer or dealer was liable as a warrantor of fitness for a special purpose though it did not appear that the goods sold were not fit for some purposes for which goods of the sort are naturally adapted."

[3] As a general rule, therefore, a sale in the usual course of trade, of a specific standard article dealt in on the market, does not import a warranty of quality, nor a warranty of fitness for a particular purpose, although or merely because the seller is informed of such purpose. An ordinary sale of fertilizer, the name of which carries with it the object for which it is bought, does not authorize an implied warranty that it will increase the fertility of the soil. *Mason* v. *Chappell*, 15 Gratt. (56 Va.) 572. The same proposition applies to a sale of such a well known product as kerosene or coal oil. *Belcher* v. *Goff Bros.*, 145 Va. 448, 134 S. E. 588. The same principle was applied in a recent Georgia case to a purchase of law books by a lawyer, when he claimed

that there was a breach of an implied warranty of fitness for the purpose of aiding him in the practice of law. *Powell* v. *Cowart* (Ga.), 139 S. E. 585.

[4] On the other hand, the case of *Gerst* v. *Jones & Co.*, 32 Gratt. (73 Va.) 518, 34 Am. Rep. 773, furnishes an illustration of an instance in which the goods were sold to the purchaser for a purpose known to both parties, *and they were bought by the purchaser in reliance upon the judgment and skill of the seller that they were suitable for the buyer's purposes;* an implied warranty was upheld. The court there held that when a manufacturer or a dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied; for in such case the buyer trusts to the manufacturer or dealer, and relies upon his judgment and not upon his own. The principles of law as stated by Mr. Williston in the quotation, *supra*, are thus expressly approved in this State.

[5] Also in *Latham* v. *Powell*, 127 Va. 382, 103 S. E. 638, it was held that while the maxim *caveat emptor* applied generally to the sale of chattels by description, yet it did not apply where there was either an express warranty, or a warranty implied from the nature and circumstances.

In *Standard Paint Co.* v. *Vietor*, 120 Va. 595, 91 S. E. 752, the seller sold roofing for a building which he knew was required to be watertight and the seller put the roofing on; both parties, says the court, understood that the roofing was sold upon a guarantee that if properly applied it would be watertight, as was

properly apparent from the contemporaneous letters and the evidence on both sides. That was a case of a sale of a specific article, prepared and ready-to-lay roofing known as "Ruberoid," which the seller undertook to put upon the roof of the buyer's tobacco warehouses, it being known that it was of the utmost importance that the warehouses should be impervious to water, and the seller undertaking to repair any leak that might occur for a period of ten years.

It is manifest from all the circumstances of the case that the buyer trusted to the judgment and skill of the seller to furnish a watertight roofing, and an implied warranty to that effect resulted.

Many cases from other States were called to our attention by counsel in very extended argument. Any attempt to review them is precluded by the reasonable limit of a judicial opinion. Beyond the Virginia cases we need to refer only to the Federal authorities.

In *Linen Thread Co.* v. *Shaw*, 9 Fed. (2nd Series) 17, the United States Circuit Court of Appeals says:

"Regardless of the statute of Massachusetts, there is under the common law an implied warranty that articles supplied by a manufacturer or dealer shall be reasonably fit for the purpose for which he knew they were intended, provided the purchaser relies upon his skill and judgment."

*Hercules Powder Co.* v. *Rich* (C. C. A.), 3 Fed. (2nd Series) 12, contains, on page 17, *et seq.*, a discussion of the doctrine of implied warranty. The court holds first that if a person orders a particular article with which he was familiar, and it was sent to him, he then obtained exactly what he bought, and even if the agent selling it knew the purpose for which the article was intended to be used and assured the purchaser it would effect that purpose, such assurance would be merely

the expression of an opinion and not ground for an implied warranty; citing *Seitz* v. *Brewers Refrigerating Machine Co.*, 141 U. S. 510, 12 S. Ct. 46, 35 L. Ed. 837, and other cases as illustration of this general rule, to which we may add *Belcher* v. *Goff Bros.*, *supra*. After detailing briefly the evidence in the case, the court holds that it does not come within the purview of the decisions just cited, but is controlled by the further principle stated thus:

"When one contracts to supply an article in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the vendor, there is an implied warranty that it shall be reasonably fit for the purpose to which it is to be applied; and the better doctrine is that this rule applies to dealers as well as to manufacturers, and not to manufacturers alone."

A long list of cases are noted in support of this rule, among them *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108, 3 S. Ct. 537, 28 L. Ed. 86; and here we may add *Gerst* v. *Jones & Co.*, *supra*.

A writ of certiorari in this case, *Hercules Powder Co.* v. *Rich* (C. C. A.), 3 Fed. (2nd) 12, was denied by the Supreme Court of the United States, 268 U. S. 692, 45 S. Ct. 511, 69 L. Ed. 1160.

The doctrine in the Federal courts is manifestly in accord with the general principles recognized in the Virginia cases.

[6] From the evidence in the instant case, the material portions of which have been recited above, it is beyond dispute that the jury might justly infer that the buyer here stated his needs to the seller; that the seller knew what they were and sold the mill to suit the character of business conducted by the purchaser, that is the production and sale of table meal;

that the buyer was ignorant of the fitness of the mill for this particular purpose; that seller represented himself as knowing that the mill would fulfill the purpose for which the buyer desired it, and that in making the purchase the buyer justifiably relied upon the superior information, skill and judgment of the seller, and not at all upon his own knowledge or judgment. Under such circumstances an implied warranty of fitness was properly claimed by the purchaser.

The judgment of the trial court will be affirmed.

*Affirmed.*