### W. N. CLARK COMPANY,
Appellant,

v.

### MILLER MANUFACTURING COMPANY, Incorporated, Appellee.
### No. 7003.

United States Court of Appeals
Fourth Circuit.

Argued June 16, 1955.
Decided July 15, 1955.

Archibald G. Robertson, Richmond, Va. (Hunton, Williams, Gay, Moore & Powell, Richmond, Va.; Spencer, Ogden, Gandy & Gillette, Donald F. Gandy, Rochester, N. Y., and Harry Frazier, III, Richmond, Va., on brief), for appellant.

Collins Denny, Jr., and John S. Davenport, III, Richmond, Va. (Denny, Valentine & Davenport and John S. Owen, Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

W. N. Clark Company (hereinafter called Clark) instituted, in the United States District Court for the Eastern District of Virginia, a civil action against Miller Manufacturing Company, Incorporated, (hereinafter called Miller), seeking damages for an alleged breach of warranty. The District Court granted Miller's motion for summary judgment in its favor and dismissed Clark's complaint. Clark has appealed to us.

■ Upon motion by Miller for summary judgment, all issues of fact appearing from the record are, for the purpose of this appeal, resolved in favor of Clark.

Clark is a commercial canner of fruits and vegetables. Prior to June, 1950, Leroy G. Lady, General Manager of Clark, investigated the advisability of impregnating lug boxes with Nuodex, and was advised by a representative of Nuodex Products Company that Miller Manufacturing Company manufactured lug boxes and impregnated them with Nuodex.

Sometime later O. M. Lee, representing Miller, and John Hall, Miller's representative for the State of New York, called upon Lady, and the matter of preserving boxes with Nuodex was discussed, so that it was within the knowledge of Lee that lug boxes purchased by Clark would be used to transport raw peas and that the peas would come in contact with the boxes. This conference was chiefly concerned with whether or not the raw peas would pick up any off-odor or off-taste by reason of the wood preservative used.

Thereafter, on June 1, 1950, Clark placed its order with Miller for "500 Pea Lug Boxes" which were to be "Dipped with Nuodex." Later, Clark placed a second order with Miller for a minimum carload (approximately 2,000) pea lug boxes. The order stipulated that the boxes be dipped with Nuodex.

Miller acknowledged this order by letter of January 29, 1951. On February 8, 1951, Miller wrote Clark requesting permission to dip the boxes in WoodLife rather than in Nuodex for the reason that WoodLife was less expensive to Miller than Nuodex. Miller's entire letter is as follows:

"In checking over your order number 5262 we note that you specify that these crates be dipped in Nuodex.

"This year we are dipping all of our crates in WoodLife wood preservative water repellant dip instead of Nuodex. We changed to this dip because the cost of Nuodex was so much that our material cost was more than we were charging for the dipping operation. Before changing we thoroughly investigated the merits of both dips and found that the WoodLife was recognized by the Department of Agriculture as being a more effective preservative than Nuodex. We also checked with several canners who have been using WoodLife treated crates for a number of years such as the Illinois Canning Company and Rochelle Asparagus Company and etc. and they state that they have never had any trouble with the vegetables picking up the odor or taste of the dip.

"Test (sic) run by the Department of Agriculture are very inconclusive on both Nuodex and WoodLife as to the danger of fruit and vegetables picking up the odor or taste. But the Department of Agriculture at Beltsville, Maryland states that they feel the danger of this is negligible if the crates are allowed to cure thoroughly after dipping, and if the product is not held in the refrigeration for long periods of time in these crates. We have shipped several thousands boxes dipped in WoodLife to Florida. These are mainly used in harvesting tomatoes and we have had no complaints.

"Please let us know if it is satisfactory to dip the crates which you have on order in WoodLife."

Clark replied on February 14, 1951, as follows:

"This is to acknowledge your letter of February 8th referring to our order No. 5262.

"Concerning the use of WoodLife versus Nuodex for treating the field lug boxes, we will be governed by your experience in (sic) using these materials. If you can assure us that we will get as good results using WoodLife as we have from your boxes treated with Nuodex, you have our permission to use WoodLife on our order No. 5262.

"We would like to have this assurance from you in writing."

On February 16, 1951, Miller wrote to Clark:

"As far as the wood preservative qualities of WoodLife and Nuodex are concerned all sources which we have contacted have stated that WoodLife is superior as a wood preservative. *We feel sure that you are going to be well satisfied with the boxes dipped in WoodLife and appreciate your permission allowing us to do this.*" (Italics added.)

On February 19, 1951, Clark wrote Miller as follows:

"We acknowledge your letter of February 16th. advising that the wood preservative qualities of WoodLife are satisfactory, and that you feel sure we will be satisfied with boxes treated with same. Accordingly, you have our permission to ship the car of lug boxes."

A carload of 2,288 pea lug boxes treated with WoodLife was accordingly shipped to Clark's processing plant at Caro, Michigan, on March 16, 1951, and the boxes were used by Clark in processing and packing peas for the season which commenced on June 26, 1951.

When tests were made at the conclusion of the 1951 canning season, Clark alleges that the peas were found to have such an off-odor and off-taste that the greater portion of the entire pack of peas was unfit for sale in Clark's normal course of business and that the off-odor and off-taste were due to the presence in WoodLife of a chemical compound known as pentachlorphenal.

The District Judge, in the order for summary judgment, decided that "no warranty either express or implied alleged in the complaint had been made by defendant;" that "plaintiff does not intend to allege fraud" and that "defendant is entitled to judgment as a matter of law." We think the District Judge erred in holding that there was no warranty either express or implied. The judgment of the District Court must be reversed and the case remanded for a new trial.

We briefly analyze the situation as it appears. Clark had ordered boxes treated with Nuodex. Miller, entirely for its own advantage, asked permission to use WoodLife. Clark replied that it must rely on Miller's experience and asked reassurance in writing from Miller. Miller's letter of February 16, 1951, stated "All sources which we have contacted have stated that WoodLife is superior as a wood preservative. *We feel sure that you are going to be well satisfied with the boxes dipped in WoodLife and appreciate your permission allowing us to do this.*" (Italics ours.)

We think this letter constituted the written assurance that Clark demanded; that Clark relied upon it and was justified in doing so; and that by virtue of it, Clark consented to the substitution of WoodLife for Nuodex. Accordingly, we hold that here was an express warranty by Miller. Clark had made clear that it would consent to the substitution of WoodLife only on condition that it be assured that it would get as good results as if Nuodex had been used. The language used by Miller was intended to give the assurance asked and that Miller so understood is shown by the statement that it appreciates the permission for the substitution. In other

words, the language used by Miller shows an intention to accept and comply with the condition stipulated by Clark, not an intention to make a counter-proposition. We have no doubt but that this constitutes an express warranty under the law of Virginia, as well as under the provisions of the Uniform Sales Act, which, however, has not yet been adopted in that state.

As far back as 1861, in Mason v. Chappell, 15 Grat. 572, 582, 56 Va. 572, 582, Judge Robertson said:

"To constitute a warranty, no particular form of expression is required; an apparent intention to warrant is sufficient. It is enough, if the words used import an engagement on the part of the vendor that the article is what he represents it to be. Any distinct affirmation of quality made by the vendor, at the time of the sale, not as an expression of opinion or belief, but as an assurance to the purchaser of the truth of the fact affirmed, is, if accordingly received, and relied on, and acted upon by the purchaser, an express warranty."

This case was approved in an elaborate opinion by Keith, P., in Reese & Co. v. Bates, 94 Va. 321, 26 S.E. 865, citing 2 Benjamin on Sales (6th Ed.) 811–812. And it was again approved in Judge Fauntleroy's opinion in Herron & Holland v. Dibrell Brothers, 87 Va. 289, 12 S.E. 674.

A definition of an express warranty is found in Section 12 of the Uniform Sales Act as follows:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of seller's opin-

ion only shall be construed as a warranty."

In Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 3 Cir., 190 F.2d 817, 821, Circuit Judge Staley stated:

" * * * There is strong authority, however, for the proposition that any warranty derived from the express language should be considered an express warranty. Since such warranty is based on words which are actually a part of the contract between the parties, it seems most unrealistic to call the obligation implied."

We hold, accordingly, that there is in the instant case an express warranty. See, also, the opinion of Circuit Judge Soper, speaking for our Court, in Universal Major Electric Appliances, Inc. v. Glenwood Range Co., 223 F.2d 76.

We find nothing in the late Virginia cases, heavily relied upon by counsel for Miller, which militates against the conclusion we have reached. These cases deal primarily with implied warranties; whereas, we have reached the definite conclusion, as has already been indicated, that the case before us involves an express warranty. We need not go into the question as to whether plaintiff under the circumstances here shown would be entitled to recover on an implied warranty if there were no express warranty.

See E. I. du Pont de Nemours & Co. v. Universal Moulded Products Corporation, 191 Va. 525, 62 S.E.2d 233; Greenland Development Corporation v. Allied Heating Products Co., 184 Va. 588, 35 S.E.2d 801, 164 A.L.R. 1312; Universal Motor Co. v. Snow, 149 Va. 690, 140 S.E. 653, 59 A.L.R. 1174; Standard Paint Co. v. E. K. Vietor & Co., 120 Va. 595, 91 S.E. 752.

The judgment of the District Court is reversed and the case is remanded to that Court for proceedings in accordance with this opinion.

Reversed and remanded.