# Richmond.

## FORD MOTOR COMPANY v. SWITZER.

### November 13, 1924.

1. SALES—*Warranty—Agency—Sale of Automobile—Manufacturer as Principal of Retail Dealer—Joint Transaction—Case at Bar.*—In the instant case, an action for damages for breach of warranty, plaintiff was in negotiations for the purchase of a machine from one of the defendants, a retail dealer, and at the suggestion of the retail dealer and accompanied by one of its servants, plaintiff went to Washington and at the office of the manufacturer there was shown a machine. Plaintiff was simply a "prospect" of the retail dealer, and what was done by the agents of the manufacturer in Washington in effecting the sale was merely to assist the agent of the retail dealer in showing the car and commending it to the plaintiff. It appeared from the evidence that there were two sales of the car. One to the retail dealer by the manufacturer and one to the plaintiff by the retail dealer on entirely different terms. There was no evidence to show that the retail dealer was in any sense the agent of the manufacturer or that it was held out to the public as such agent.

   *Held:* That the plaintiff failed to establish his claim either that the manufacturer actively participated with the retail dealer in making the sale of the car to him, or that it was liable as a principal actor through the retail dealer as its agent and representative; and that an instruction upon the liability of the manufacturer if the retail dealer was its agent in the transaction, or if it was a joint transaction between the retail dealer and manufacturer on the one side and the plaintiff on the other, was erroneous.

2. WARRANTY—*Writing—Presumption that Writing Contains All.*—Where a party gives a written warranty, it is presumed that the writing contains all that is intended to be warranted, and, as a general rule, no other warranty will be implied.

3. WARRANTY—*Sale of Automobile—Damages for Breach of Warranty—Case at Bar.*—In the instant case, an action for breach of warranty of an automobile, the plaintiff insisted that he should have a new body to the car and defendant insisted that if liable at all, it was only liable to have the car repainted. The cost of repainting was estimated at from $150.00 to $500.00 while the plaintiff testified that a new body would cost approximately $2,500.00.

*Held:* That a verdict for plaintiff of $900.00 was not supported by any evidence in the case.

4. WARRANTY—*Limitations—Time Limit—Case at Bar.*—In the instant case, an action against a manufacturer for damages for breach of warranty of an automobile, in making the warranty the manufacturer had the right to put any limitations it chose upon the character of the warranty or the time during which it was to remain in effect. Having provided a time limit of ninety days, and that having expired, its rights under the warranty had become fixed and vested, and the plaintiff was barred by the expiration of the ninety days from any recovery thereon, unless this right was waived by the manufacturer.

5. WARRANTY—*Waiver—How Waiver of Warranty May Arise—Estoppel.*— A waiver, to operate as such, must arise in one of two ways, either by contract, or by estoppel. If by contract, it must be supported by a valuable consideration; that is, such consideration as will support any other contract. In order for there to be an estoppel by conduct, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct.

6. WARRANTY—*Waiver of Time Limit—Sale of Automobile—Case at Bar.*— In the instant case, an action for breach of warranty of an automobile, plaintiff claimed that the ninety day time limit set out in the warranty was waived by the manufacturer. The manufacturer had the car inspected at different times by several of its agents and repeatedly offered to have the car repainted. The breach of warranty alleged was a defect in the painting of the car. It was not claimed by the plaintiff that there was a new contract supported by a valuable consideration that would constitute a waiver and there was nothing in the evidence to show that the plaintiff in any way altered or changed his position to his disadvantage in consequence of the repeated offers of the manufacturer to repaint the car.

*Held:* That under these circumstances there was no such waiver of the time limit in the warranty on the part of the manufacturer as would entitle the plaintiff to recover.

7. APPEAL AND ERROR—*Final Judgment by th· Appellate Court—Breach of Warranty—Case at Bar.*—In the instant case, an action for damages for breach of warranty of an automobile, the plaintiff failed to make out its case against defendant and there was no evidence in the record to support the verdict for plaintiff. Therefore, the judgment of the trial court was reversed, the verdict of the jury set aside, and judgment entered by the Supreme Court of Appeals, pursuant to section 6365 of the Code of 1919, dismissing the plaintiff's action.

Error to a judgment of the Corporation Court of the city of Staunton, in a proceeding by motion for a

judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*A. C. Gordon* and *Fitzhugh Elder*, for the plaintiff in error.

*Rudolph Bumgardner* and *J. M. Perry*, for the defendants in error.

BURKS, J., delivered the opinion of the court.

This was a proceeding by a motion for a judgment, with an attachment, by D. L. Switzer against the Ford Motor Company and the Beverly Garage, Inc., to recover damages for a breach of warranty of the materials and workmanship of a Lincoln car manufactured by the Ford Motor Company and purchased by the plaintiff. There was a verdict and judgment for the plaintiff against the Ford Motor Company for $900.00 and the defendant assigns error.

The notice alleges that on the 7th day of March, 1923, the plaintiff purchased of the Ford Motor Company, through the Beverly Garage, Inc., one Lincoln sedan at $5,157.00 cash; that in making said sale the said defendants severally warranted the said automobile against defects in material and workmanship; that the workmanship on the car was defective in several designated particulars, the most serious of which was that "the coloring on the door on the right side of the body and the narrow panel in front thereof and on the hood was a different shade from the uniform coloring of the other door and the remainder of the car;" and that the Ford Motor Company had knowledge of

the condition of the said car in respect to the paint at the time of the sale, and fraudulently concealed said situation from the plaintiff and deliberately misrepresented the condition of the said car to the plaintiff; and that in any event the principal defendants are severally and jointly liable to plaintiff for misrepresentation and breach of warranty as to the character, quality and condition of said car.

There was no evidence of any fraud or misrepresentation on the part of the Ford Motor Company, and this allegation need not be further noticed.

In the brief of counsel for Switzer (the defendant in error) it is said: "The correspondence had between the parties before suit, and which was introduced in evidence, brought them to this point:

"The plaintiff's contention was that the Ford Motor Company was liable in two aspects, first, as actively participating with the Beverly Garage in the sale transaction, and, second, was liable in any event as the principal actor through the Beverly Garage as its agent and representative; that the body of the car was defective, and the warranty was only dischargeable by supplying a new body in place of the defective one; and that, having refused this, defendants were liable for the money damages suffered by plaintiff.

"The Ford Motor Company denied that it was a party to the transaction of the sale, and denied the agency of the Beverly Garage; and insisted that the trouble was merely a 'paint defect,' as to which the warranty was discharged by merely repainting the car, and, their offer to do this having been refused, that the plaintiff had no claim for money damages."

It is conceded that there was a defect in the painting and that it was material.

The Ford Motor Company is a foreign corporation,

doing business in this State, and manufactures Ford automobiles and also Lincoln cars. It sells its products to dealers only, and does not sell to a person desiring to purchase a single car. It gave to the Beverly Garage, Inc. (all of the stock of which was owned by Edward Woodward), the exclusive privilege of selling in the city of Staunton its Ford cars and parts, and required it to purchase and pay for five Lincoln cars annually at fixed prices, less a discount of twenty per cent. The Ford Motor Company also maintained agencies in certain of the large cities, including the cities of New York and Washington.

The Lincoln car was represented as an artistic creation, combining the refinements of grace and beauty with mechanical perfection so as to appeal to the class who had taste for beauty and means to indulge it. It is a high grade car and is said to be third in price among American cars. Switzer had been a former patron of Woodward, and in January, 1923, was the owner of a Packard car. Woodward knew that Switzer was "on the market" for a high priced car and wished to get him interested in the Lincoln car. He gave him a letter of introduction to the agent of the Ford Motor Company in New York, which was presented, and Switzer and his wife inspected a Lincoln car in New York, but were undecided about purchasing it. On their return to Staunton, Woodward saw Switzer and said to him: "You don't know what kind of a proposition I will make you on that car," and Switzer replied that he did not, and they then agreed that Switzer should purchase a Lincoln car at $5,175.00, and that he should be allowed a credit of $1,557.00 for his Packard car. Woodward then persuaded Switzer to go to Washington to see a Lincoln car at the agency there. Brubeck, an agent of the Beverly Garage, Inc.,

drove with Switzer and his wife in Switzer's car to Washington to see the Lincoln car, arriving there on March 5th. Brubeck, in company with Switzer and wife, went to the agency of the Ford Motor Company in Washington on the morning of March 5, 1923, and Brubeck presented a letter of introduction from the Beverly Garage, Inc., dated March 3, 1923, as follows: "This will introduce our Mr. C. K. Brubeck who comes to you with our prospects for a demonstration of the Lincoln sedan. Please go into the matter thoroughly both with our prospects and Mr. Brubeck, and greatly oblige.

"Yours very truly,
"Beverly Garage, Inc.
"By Ed. Woodward, Mgr."

The most connected account of what took place at the Ford Motor Company's place of business is given by Brubeck as follows:

"Q. Do you know whether the Beverly Garage had wired or called the Ford Motor Company in Washington relative to the cobalt blue seven passenger sedan?

"A. Yes; we had phoned them and they did not have this car in stock and it was our idea to take Mr. and Mrs. Switzer to Washington to see a maroon car and a brewster green which they told us they had in stock. Our idea in taking them to Washington was to change their choice from a blue to a maroon or brewster green sedan. We wanted to show them the outline of the car, to show the run or contour of the body, as Mrs. Switzer seemed to be under the impression that it was such a clumsy car, and we wanted to take them to Washington so they could see the size of the Lincoln and change them from a blue to a maroon.

"Now I had a letter of introduction to Mr. Eynon

and on reaching the Ford place went in and asked for him. I forget the gentleman's name who met us in the salesroom, but Mr. Eynon was in some sort of a conference and of course would not see me, and he got Mr. Wirgman, and I explained to Mr. Wirgman who I was and he told me that Mr. Eynon was in a conference and then I told him that they were a prospect for a Lincoln sedan, and we had been trying to change them from their choice of a blue car to a maroon, but what they wanted was a cobalt blue.

"Then he said that he had this car in stock, and I told him then that was just what we wanted. He took us through lots of halls to a back room down from the street, slightly below the show room, and there were two cars, covered with canvas.

"Q. Was it on the street side?

"A. No; there is no street right there. It was not a bright show room. We then told Mr. Wirgman, after seeing the car, that it was just what we wanted and thought it strange that when we were talking to them over the phone about the car we wanted they told us they had no blue car in stock, and it was then that he said the car was ordered for some lady, and said that it had been rejected.

"We threw the cover off and Mrs. Switzer got in. The only objection she made was that it had gray broadcloth upholstery. All that was left to do was to change her mind about the color of the upholstery. The demonstrating salesman finally convinced Mrs. Switzer that the broadcloth upholstery would wear better than the velour."

Switzer gives very much the same account, but says that they could not see the color of the car very well and did not like the upholstery, but finally agreed to take it. He signed no papers of any kind in Washing-

ton, and stated that the arrangement for the payment for the car and its release were made by Mr. Brubeck, not in his presence. On cross-examination, he was pressed to know whether or not he bought the car from the Ford Motor Company, but his answers were evasive. The questions and answers were:

"Q. You did not buy the car from the Ford Motor Company?

"A. We bought it there in the place."

"Q. Did you buy it from the Ford Motor Company?

"A. We bought it there."

He further stated that two days after, when they got to Staunton, a bill of sale was made out, dated March 7, 1923, and that on that day the car was paid for by him and was delivered to him. When asked if he did not know the car was released to Brubeck and not to him, he answered: "I did not."

Mrs. Switzer, testifying as to what took place in Washington, said: "I looked at the upholstery, and said I wanted velour. Mr. Wirgman and the other gentleman said I was making a mistake in choosing velour, as broadcloth would wear better. That was such a minor consideration that I said: 'All right, I am satisfied with that.' I don't think we were ten minutes in all buying the car." When questioned about the time of the sale, she said: "I considered the sale was made to us when they turned the car over to us in Washington and expressed the hope that we would be pleased with it."

Woodward, who was the owner of the Beverly Garage, Inc., was examined as a witness for Switzer. In the course of his examination he testified, among other things, as follows:

"Q. As a matter of fact the car was sold to you;

you agreed to pay for it, and did pay for it, and the release was made to the Beverly Garage, Inc.

"A. Yes; it is perfectly true, and I am not going to conceal anything.

"Q. The matter don't seem very plain to me—was this car sold to you and released to you and then you sold it to Switzer?

"A. Yes."

It appears from the testimony that after Switzer had agreed to take the car it became necessary for the purchase price to be paid to the Ford Motor Company before the car could be removed. Brubeck had not come prepared to pay the purchase price, so had to call Woodward over the long distance phone to arrange for the payment, and finally it was agreed by the Ford Motor Company that the car would be released to the Beverly Garage, Inc., if Woodward would forward his check that afternoon to the Ford Motor Company for $4,178, which was the net price to the Beverly Garage, Inc., of the car. This was done and the car released to the Beverly Garage, Inc. Brubeck, with the Switzers, drove the car out of Washington that afternoon.

It will be observed that the price paid by the Beverly Garage, Inc., was $4,178 cash. The terms under which the Beverly Garage, Inc., sold to Switzer were $3,600 cash and Switzer's Packard car at $1,557. This transaction was completed between the Beverly Garage, Inc., and Switzer on March 7, 1923, and the car delivered to Switzer. The Beverly Garage, Inc., at the same time gave a written warranty, good for twelve months, which also included the factory warranty of the Ford Motor Company. The notice of motion declares on the latter contract, dated March 7, 1923.

It plainly appears from the foregoing statement of facts that there were two sales of the car and on entirely different terms.

[1] We are of opinion that the plaintiff, Switzer, failed to establish his claim, either that the Ford Motor Company actively participated with the Beverly Garage, Inc., in making the sale, or that it was liable as a principal actor, through the Beverly Garage, as its agent and representative. Switzer was simply a "prospect" of the Beverly Garage, and what was done by the agents of the Ford Motor Company in effecting the sale was merely to assist the agent of the Beverly Garage in showing the car and commending it to Switzer and his wife. There is no evidence to show that the Beverly Garage was in any sense the agent of the Ford Motor Company, or that it was held out to the public as such agent. The Beverly Garage, Inc., was a mere dealer in Ford products, and had no power to make contracts for or on behalf of the Ford Motor Company, and was not held out to the public as having such power.

In view of the facts hereinbefore recited, the trial court erred in giving, at the instance of the plaintiff, instruction No. 3, which is as follows:

"The court instructs the jury that they are to have regard to the essential substance of the transaction between the plaintiff on the one hand and the principal defendants on the other; and if the jury believe from the evidence in this case that the plaintiff went to Washington at the instance of the Beverly Garage, Inc., acting by and through Edward Woodward, for the purpose of examining a Lincoln sedan, being as then in no wise committed to any purchase to said Beverly Garage, Inc., and at Washington was shown a

car at the branch establishment of the Ford Motor Co., and as the result of the negotiations and transactions there and then had between the plaintiff and the Washington agents and representatives of said Ford Motor Company, selection was made of said car and the plaintiff agreed unconditionally to purchase same, and said car was then and there placed under the dominion and control of the plaintiff; and removed by him, or under his charge, from Washington to Staunton, and there placed in the Beverly annex, where plaintiff had formerly kept his Packard car, even though the jury may believe further from the evidence that, in conformity to private regulations or customs of the Ford Motor Company, the Beverly Garage, Inc., was required to guarantee payment for said car, and payment therefor was to be made through the Beverly Garage, Inc., and formal release from the Washington warehouse was made in the name of the said Beverly Garage, Inc., the jury should find that said sale was made at Washington as a joint and common transaction between the principal defendants, enuring to their mutual benefit, in which joint responsibility, liability, and duty attach both as respects any wrong shown in this case to have resulted to the plaintiff growing out of the fact of such sale."

The only warranty ever given or authorized by the Ford Motor Company was the following: "The Lincoln Motor Company, warrants each new vehicle manufactured by it, whether passenger car or commercial vehicle, to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser, be returned to it with trans-

portation charges prepaid, and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties expressed or implied and all other obligations or liabilities, on its part, and it neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its vehicles.''

The trial court recognized this as the only warranty made by the Ford Motor Company, and gave, at the instance of the defendant, and without objection from the plaintiff, instruction No. 6, which is as follows:

"The court instructs the jury that the written warranty in this case, sometimes called the factory warranty, is the only warranty made by the defendant Ford Motor Company as to the Lincoln automobile sold to the plaintiff, and that this warranty sets out and limits the rights and liabilities of both the plaintiff and this defendant.''

[2] Where a party gives a written warranty, it is presumed that the writing contains all that is intended to be warranted, and, as a general rule, no other warranty will be implied. 30 Am. & Eng. Ency. L. (2d ed.), 168.

[3] It was claimed by the plaintiff that the ninety days time limit set out in this warranty was waived by the Ford Motor Company, and there was considerable testimony and argument on this question. It is undoubtedly true that the Ford Motor Company did have this car inspected at different times by some four or five of its employees and agents, and that the company repeatedly offered to have all of the old paint on the car taken off down to the metal of the body, and to have the car repainted as fully and completely as if it had never been painted in the first instance. But the

proposition was each time declined; Switzer insisting that he should have a new body to the car, and the Ford Motor Company insisting that, if liable at all, it was only liable in any event to have the car repainted in the manner indicated in their proposition. The cost of repainting in the manner indicated was estimated by different witnesses at from $150 to $500, while Switzer testified that a new body would cost approximately $2,500. The verdict of the jury was for $900, which was an amount not supported by any evidence in the case.

[4, 5] Switzer testified that he knew nothing about the factory warranty up to the time of the trial, but it may be conceded that the Ford Motor Company was liable upon its warranty according to its terms. In making the warranty it had the right to put any limitations it chose upon the character of the warranty or the time during which it was to remain in effect. Having provided a time limit of ninety days, and that having expired, its rights under the warranty had become fixed and vested, and the plaintiff was barred by the expiration of the ninety days from any recovery thereon, unless this right was waived by the Ford Motor Company.

In *Atlantic Coast Line* v. *Bryan*, 109 Va. 523, 65 S. E. 30, it is said: "A waiver, to operate as such, must arise in one of two ways, either by contract, or by estoppel. If by contract, it must be supported by a valuable consideration; that is, such consideration as will support any other contract. 28 Am. & Eng. Ency. of L. (1st ed.), 531, and notes.

\*  \*  \*  \*  \*  \*  \*  \*  \*

"In order for there to be an estoppel by conduct, the party sought to be estopped must have caused the other party to occupy a more disadvantageous position

than that which he would have occupied except for that conduct.

"As this court has said: 'Conduct will not operate as an estoppel as against one who has not been induced thereby to alter his position to his prejudice.' *Terry* v. *McClung*, 104 Va. 599, 52 S. E. 355; *Rorer Iron Co.* v. *Trout*, 83 Va. 410, 2 S. E. 713, 5 Am. St. Rep. 285." To the same effect see *Liquid Carbonic Co.* v. *N. &. W. R. Co.*, 107 Va. 323, 58 S. E. 569, 13 L. R. A. (N. S.), 753; *Virginia-Carolina Chemical Co.* v. *Southern Express Co.*, 110 Va. 667, 66 S. E. 838; *Old Dom. Steamship Co.* v. *Flanary*, 111 Va. 821, 69 S. E. 1107; *North British Ins. Co.* v. *Robbinett*, 112 Va. 754, 72 S. E. 668.

The cases of *Richmond L. Mfg. Co.* v. *Fawcett*, 130 Va. 484, 107 S. E. 800, and *Monroe* v. *Cowne*, 133 Va. 191, 198, 112, S. E. 848, cited for the defendant in error, are not in conflict with the cases above cited. The facts in *Richmond L. Mfg. Co.* v. *Fawcett* are so entirely different from those in the instant case as not to require a further consideration of it. In *Monroe* v. *Cowne* it appears from the opinion of the court that there was abundant evidence to show that the plaintiff had performed all the requirements as to notice of the warranty on his part. It was said, among other things: .

"The general rule undoubtedly is that the contract requirement as to place, as well as the time and manner of giving such notice, must be strictly complied with. But such requirements may be waived by conduct of the seller.

"The evidence of the plaintiff was to the effect that before the agent of the defendant, Fritz, who installed the machine, left the plaintiff's premises, immediately after the starting of it, and after various trials of it, Fritz had notice that the machine failed to work prop-

erly, with proper management, and so admitted at the time. This notice to the defendant's agent, about a matter within the scope of the agent's employment, given while the agent was engaged in the performance of his duties, while not notice at the place required by the contract, was constructive notice to the defendant. The testimony for the plaintiff is further to the effect that he again notified the defendant that the machine wouldn't work and within four days after Fritz gave up the undertaking to make it work and left the place, Mr. Snyder, another agent of the defendant, being the agent who sold plaintiff the machine, came up to the plaintiff's place, where the machine was, in response to the latter's notice. That thereafter plaintiff gave the defendant further notice that the machinery wouldn't work, and that another agent was sent by the defendant to try and get it to work properly, without success, and that finally Mr. Monroe, one of the officers of the defendant company, came several times and tried to and did not succeed in getting the machinery to operate as guaranteed. It is true that the defendant denied the receipt of the notices mentioned, but the credibility of the denial was for the jury."

[6] It is not claimed by Switzer that there was any new contract supported by a valuable consideration that would constitute a waiver, and there is nothing in the evidence to show that Switzer in any way changed or altered his position to his disadvantage, in consequence of the repeated offers of the Ford Motor Company to repaint the car. Under these circumstances there was no such waiver on the part of the Ford Motor Company as would entitle the plaintiff to recover.

In view of what has been stated, we deem it un-

necessary to enter upon any further discussion of the instructions given and refused.

[7] We are of opinion that the plaintiff failed to make out a case against the Ford Motor Company, and that there is no evidence in the record to support the. verdict. For these reasons, the judgment of the trial court will be reversed, the verdict of the jury set aside, and judgment will be entered by this court, pursuant to section 6365 of the Code, dismissing the plaintiff's action, and in favor of the Ford Motor Company for its costs.

*Reversed.*