## Richmond

WILLIAM J. MARSHALL, JR. v. MURRAY OLDSMOBILE COMPANY, INCORPORATED.

April 24, 1967.

Record No. 6384.

Present, All the Justices.

*James B. Wilkinson* (*Cutchins, Wallinger, Christian & Wilkinson*, on brief), for the appellant.

*John T. Wingo* and *Robert N. Pollard, Jr.* (*Williams, Mullen & Christian*, on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

By bill of complaint filed in the trial court, William J. Marshall, Jr., the complainant, sought the rescission of a contract whereby he purchased from Murray Oldsmobile Company, Incorporated, the defendant, a 1962 F-85 Jetfire Oldsmobile. The bill alleged that the defendant had expressly warranted that the automobile was free from defects in materials and workmanship and had impliedly warranted that it "would fit the purpose for which it was sold"; that the vehicle was "inoperable and worthless" because of defective conditions therein; that the defendant had failed to correct the defects; that the complainant had returned the car to the defendant; and that the complainant was entitled to recover the purchase price of $3,633.70.

The defendant filed an answer alleging that it had furnished the complainant a "New Car Warranty" in writing, warranting that the vehicle was free from defects in material and workmanship, but asserting that it had fulfilled its obligations under that warranty. The defendant further alleged that the written warranty given the complainant provided that there were no warranties, express or implied, other than the "New Car Warranty" and that the written warranty was "in lieu of all other warranties, expressed or implied and all other obligations or liabilities on Dealer's part."

The cause was heard upon depositions. The trial court, in its final decree, ruled that the complainant was "not entitled to the relief prayed for in the Bill of Complaint," and dismissed the bill. The complainant was granted an appeal.

The evidence shows that the complainant purchased the automobile in dispute from the defendant on September 24, 1962. The vehicle was a demonstrator and had been operated 3,600 miles at the time of purchase. The complainant bought the automobile as "a family car."

The vehicle "operated very well" until October 29, 1962. On that date, the complainant attempted to start the car, and "the starter acted as if the starter motor were locked up." When the vehicle did start, "the engine had a miss in it, it had a slight knock in it." The complainant drove the car to the defendant's repair shop and told the defendant's employee, "just fix it."

The defendant kept the vehicle in its shop for several weeks while attempting to locate and repair the trouble in the engine. Finally, a factory representative was called in, and he discovered that the difficulty was in an assembly which metered "rocket fuel" into the car-

buretor. The defect was repaired, and the vehicle was returned to the complainant.

On November 20, 1962, the complainant again delivered the vehicle to the defendant for repairs. On that occasion, the defendant installed a plug in the choke housing, repaired the gas gauge, and adjusted a door glass. On December 4, 1962, the complainant presented the automobile to the defendant for repairs to the speedometer.

On February 23, 1963, the complainant delivered the vehicle to the defendant for repairs to the transmission, with which he had experienced difficulty. Repairs were made, and the vehicle was returned to the complainant. When he was not satisfied with the performance of the transmission, an employee of the defendant told him "to drive it a while, and see if it wouldn't get better."

On March 30, 1963, while the vehicle was being operated by a Mrs. Previs, to whom it had been loaned by the complainant, the transmission "just quit." The complainant towed the car to the defendant's garage and told the defendant not to repair it, that he was "rescinding the sale of the automobile."

When the vehicle was finally returned to the defendant, it had been operated 8,331 miles by the complainant. The complainant retained a key to the vehicle and did not tender the certificate of title to the defendant until March 19, 1964. Thereafter, the parties entered into an agreement, without prejudice to the rights of either, that the vehicle should be sold "if an agreeable price can be obtained."

During the course of the proceedings in the court below, the defendant, with the consent of the complainant and pursuant to an order of court, disassembled the transmission and found therein only a minor defect, which was repaired at a cost of $12.00. The retail price of the earlier repairs performed by the defendant totaled $456.55. All repairs were done without cost to the complainant, under the terms of the "New Car Warranty."

■ The "New Car Warranty" furnished the complainant by the defendant is set out in full in the margin.[1]

---

(1) "There are no warranties, expressed or implied, on Oldsmobile motor vehicles sold by Dealer except the following New Car Warranty which Dealer, as Seller, and not as agent of the Manufacturer, gives to Purchaser on each new Oldsmobile motor vehicle sold by Dealer:

"Dealer warrants (except as hereinafter provided) each new Oldsmobile motor vehicle and chassis, including all equipment or accessories thereon manufactured or supplied by Oldsmobile Motor Division of General Motors Corporation, sold by Dealer to be free from defects in material and workmanship under normal use and service, Dealer's obligation under this warranty being limited to repairing or re-

At the outset of our discussion, it should be noted that the complainant does not rely upon a breach of the "New Car Warranty" as a ground for his asserted right to rescind the contract. Instead, he relies solely upon a breach of an alleged implied warranty of fitness, stating that his case "rises or falls on whether there was an implied warranty of fitness for the purpose for which [the automobile] was sold, that is, as a family car." The narrow question to be decided, then, is whether such an implied warranty existed.

The complainant insists that there was an implied warranty of fitness attached to the sale of the automobile, notwithstanding the exclusionary language of the written warranty. He says that this court has held that a warranty of fitness may be implied in the face of an express warranty disclaiming the existence of such an implied warranty. In any event, the complainant argues, the exclusionary provisions of the express warranty are void for "overriding reasons of public policy."

The complainant relies upon our decision in *Greenland Corp.* v. *Allied, Etc., Co.*, 184 Va. 588, 35 S. E. 2d 801, 164 A.L.R. 1312, as authority for his contention that he is entitled to the benefit of an implied warranty of fitness despite the existence of the express warranty. In that case, furnaces sold by the defendant to the plaintiff did not perform satisfactorily; and the plaintiff brought action to recover damages for breach of warranties, both express and implied. The express warranty was that the materials furnished by the defendant were guaranteed "for one year against defective material and workmanship." The defendant contended that no warranty of fitness could be

placing at Dealer's option, without charge for installation by Dealer at Dealer's place of business, any part or parts thereof which shall, within twelve (12) months after delivery of such vehicle or chassis to the original purchaser or before such vehicle or chassis has been driven twelve (12,000) miles, whichever event shall first occur, be returned to Dealer at Dealer's place of business and which Dealer's examination shall disclose to its satisfaction to have been thus defective.

"The provisions of this warranty shall not apply (1) to tires, or (2) to normal maintenance services, including but not limited to, fuel system cleaning, wheel alignment and balancing, engine tune-up, and brake inspection or adjustment, nor to the replacement of spark plugs, ignition points, condensers or filters when such replacements are made as part of any such normal maintenance service, or (3) to any motor vehicle or chassis which shall have been repaired or altered outside of an authorized Oldsmobile dealership in any way so as in the judgment of dealer to affect adversely its performance and reliability or (4) to any motor vehicle or chassis which has been subject to misuse, negligence or accident. This warranty is expressly in lieu of all other warranties, expressed or implied and all other obligations or liabilities on Dealer's part, and Dealer neither assumes nor authorizes any other person to assume for it any other liability in connection with such motor vehicles or chassis."

implied in view of the existence of the express warranty.

We held that an implied warranty of fitness and suitableness attached to the sale of the furnaces because "the express warranty in the written order is in no wise inconsistent with the implied warranty," thus adopting the rule set forth in 1 Williston on Sales, 2d Ed., sec. 239, pp. 473-474.

Likewise, in *duPont Co.* v. *Universal Moulded Prod.*, 191 Va. 525, 62 S. E. 2d 233, a warranty of fitness was implied in the sale of paint products carrying an express warranty of uniformity of quality and ingredients, this court stating that there was nothing inconsistent between the implied and express warranties, but that "the two warranties were complementary rather than conflicting." 191 Va., at p. 566.

The complainant's reliance upon. the two cases just discussed is misplaced. In neither of the cases was there any language in the express warranty disclaiming the existence of an implied warranty of fitness. The rationale of those earlier decisions was that since there was no inconsistency between the express warranty and an implied warranty of fitness, the latter warranty should attach just as it ordinarily would in the absence of an express warranty. There is nothing in either case which would indicate any inclination on the part of this court to hold that parties to a sale cannot negate the existence of an implied warranty of fitness. To the contrary, in the *Greenland* opinion, there is a reference to the case of *Ford Motor Co.* v. *Switzer*, 140 Va. 383, 125 S. E. 209, where we held the purchaser of an automobile to be limited to the terms of an express warranty. The *Greenland* opinion distinguishes the *Switzer* case by saying:

> "But there the contract expressly provided that the written warranty was in 'lieu of all other warranties expressed or implied,' and the lower court had instructed the jury, without objection, that the written warranty was the measure of the rights and liabilities of both parties." 184 Va., at p. 597.

So too, here, the defendant's express warranty, in language which admits of no uncertainty or ambiguity, excluded the existence of any implied warranty of fitness. No greater inconsistency could be conceived than to imply a warranty .of fitness where the clear language of an express warranty says that none shall exist. To ignore that inconsistency and imply a warranty of fitness would be to make a new contract for the parties. That the court cannot and will not do.

We conclude that the provisions of the express warranty did ex-

clude the existence of an implied warranty of fitness of the automobile sold by the defendant to the complainant. That brings us to the complainant's contention that the exclusionary provisions of the express warranty should be held invalid for "overriding reasons of public policy."

In asking us to hold the exclusionary provisions invalid, the complainant draws our attention to the case of *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N. J. 358, 161 A. 2d 69, 75 A.L.R. 2d 1. In that case, an express warranty provided that "there are no warranties, express or implied, made by either the dealer or the manufacturer" and that the express warranty was "in lieu of all other warranties expressed or implied." The Supreme Court of New Jersey held such exclusionary langauge to be invalid, stating:

> " . . . [W]e are of the opinion that Chrysler's attempted disclaimer of implied warranty of merchantability and of the obligations arising therefrom is so inimical to the public good as to compel an adjudication of its invalidity. . . ." 161 A. 2d at p. 95.

Though the reason therefore is somewhat obscure, the court apparently felt that the disclaimer clause was "inimical to the public good" because of its finding that:

> "The gross inequality of bargaining position occupied by the consumer in the automobile industry is . . . apparent. There is no competition among the car makers in the area of the express warranty. Where can the buyer go to negotiate for better protection? Such control and limitation of his remedies are inimical to the public welfare. . . ." 161 A. 2d, at p. 87.

A reading of the *Henningsen* case and a tracing of its questionable acceptance in other jurisdictions since it was decided in 1960 fail to convince us of the efficacy of following the action of the New Jersey court. We are loath to make such abrupt changes in settled law and reluctant to declare invalid the formal undertakings of parties for such vague reasons of public policy.

We refuse, therefore, to hold invalid the exclusionary language of the express warranty here in question. We do that for two reasons. In the first place, this court has given approval to the proposition that parties may, by mutual agreement, determine and fix the only warranties by which they are to be bound in the sale of automobiles. *Ford Motor Co.* v. *Switzer, supra; Bolling* v. *Acceptance Corporation,*

204 Va. 4, 9, 10, 129 S. E. 2d 54. We do not intend to detract from that approval.

Secondly, if there exist the "overriding reasons of public policy," as claimed by the complainant and as relied upon by the New Jersey court in the *Henningsen* case, those reasons surely would have been known to our legislature when, in 1964, it adopted the Uniform Commercial Code, effective January 1, 1966. And yet, while providing in Code, § 8.2-315[2] that there shall be an implied warranty of fitness attached to the sale of goods, the legislature specifically provided in Code, § 8.2-316[3] how such an implied warranty may be excluded.

The case before us arose before the effective date of the Uniform Commercial Code; and we are not concerned, therefore, with whether the text and manner of use of the exclusionary language of the defendant's express warranty would be sufficient, under the new Code, to exclude the implied warranty. What is crucially important, however, about the adoption of the Uniform Commercial Code is

---

(2) "§ 8.2-315. *Implied Warranty: Fitness for particular purpose.*—Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section [§ 8.2-316] an implied warranty that the goods shall be fit for such purpose."

(3) "§ 8.2-316. *Exclusion or modification of warranties.*—(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this title on parol or extrinsic evidence (§ 8.2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subsection (2)

"(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

"(b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

"(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

"(4) Remedies for breach of warranty can be limited in accordance with the provisions of this title on liquidation or limitation of damages and on contractual modification of remedy."

that if the legislature did not in 1964 recognize the existence of public policy reasons sufficient to require it to say that there shall be no exclusion of implied warranties of fitness in the sale of personal property, then certainly this court cannot say that such reasons existed in 1962, when this controversy had its beginning.

The complainant's bill sought the rescission of the contract whereby he purchased the automobile from the defendant. No fraud, mistake, or disability was alleged. To be entitled to rescission, the complainant had the burden of proving the terms of the contract from which he sought relief and of showing that the defendant had breached those terms in such a material way that there resulted a total or substantial failure of consideration, thus defeating the object of the parties in making the contract in the first instance. The complainant did not bear that burden, and his bill was properly dismissed. The decree of the trial court will, accordingly, be

*Affirmed.*