## CIRCUIT COURT OF HENRICO COUNTY

Bernard Martin

v.

McGeorge Camping Center, Inc.

### Case No. 76C889

By JUDGE E. BALLARD BAKER

September 29, 1978

This dispute between Bernard Martin and McGeorge Camping Center, Inc., arose out of the purchase by Martin of a used Concord Motor Home from McGeorge on April 6, 1976, for $9,171.50.

The case was referred to a Commissioner in Chancery and by report of May 25, 1978, the Commissioner made the following findings, among others.

(1) The defendant agreed "to perform a motor tune-up on the 1972 Concord Motor Home which would include parts, plugs and condenser. In addition, the defendant was to repair the gear shift linkage, complete outwork." (Response to Third Inquiry).

(2) The defendant agreed "to make repairs to the vehicle as indicated on plaintiff's exhibit B and D and according to the testimony of Tom Kaiser all repairs were made by the defendant with the exception of the transmission which the plaintiff claims the defendant never repaired. . . Your Commissioner further finds from the testimony of the plaintiff and Billy Carter that

the defendant did accept the responsibility to repair the transmission should it be malfunctioning." (Response to Fifth Inquiry).

(3) "From the testimony of the plaintiff and Tom Kaiser, the defendant's service manager, your Commissioner is of the opinion that the repairs to the transmission were not made in good workmanship manner and within a reasonable time." (Response to Sixth Inquiry).

(4) "[Y]our Commissioner is of the opinion that there is no evidence of fraud which would cause a breech (sic) of the contract between the parties and entitle the plaintiff to a recession (sic) of the contract."

"[Y]our Commissioner finds from the evidence that even though the defendant did agree to repair the transmission and failed to do so within a reasonable time there has been no breech (sic) of warranty which would entitle the plaintiff to a recession (sic) of the contract."

"[Y]our Commissioner is of the opinion that there is no evidence to support a breech (sic) of any warranty on this case. Section 8.2-316." (Response to Seventh Inquiry).

(5) "[T]he plaintiff had a duty to mitigate his damages by having the motor home looked at or repaired by another transmission shop. . . While Mr. Martin was entitled to the benefit of his agreement with the defendant, he could have saved himself from a loss arising from the breech (sic) of the agreement if he had offered evidence that the transmission could be repaired at a reasonable expense and it was his duty to do so. Michie's Jurisprudence, *Damages*, section 16." (Response to Eighth Inquiry).

(6) "[Y]our Commissioner is of the opinion that the plaintiff abandoned the vehicle without legal justification and that such abandonment bars his recovery in this cause." (Response to Ninth Inquiry).

(7) "Your Commissioner is of the opinion that all monies paid under the contract should not be returned to the plaintiff." (Response to Tenth Inquiry).

Martin excepted to the Commissioner's Report, contending that there was fraud, that there was a breach of warranty, that there was no duty on him to mitigate damages by having repairs made by someone else, and that he did not abandon the vehicle without legal justification.

The findings referred to in paragraphs 1, 2, 3 and 4 are findings of fact by the Commissioner. Great weight

is given to such findings, though not as conclusive as a jury verdict. Here, the evidence is in conflict on these factual points, and this Court cannot say that the Commissioner erred in those findings. See Transcript, pages 40, 41, 81, 86, 103, 105, 120, 125, 127 133, 134, 148, 150, 166, 169, 170, 184 and 186, which, among others, appear to support the Commissioner's findings. In addition, he had the advantage of seeing the witnesses. I find no basis on which to say these findings are incorrect.

This Court agrees with the Commissioner that there was no fraud which supports rescission. Claims of fraud based on Martin's coming to Richmond several times to pick up the vehicle are not of the nature to support rescission. The Bill of Complaint asks rescission because of "fraud and breach of warranty." The Decree of Reference posed the same issue to the Commissioner. This, of course, raises a real question as to the effect of a breach of warranty absent fraud.

Before considering that question, is there any breach of warranty?

Section 8.2-313 defines an express warranty to include "Any. . . promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." The findings referred to in paragraphs 1 and 2 are findings of such a promise.

Section 8.2-316 deals with the exclusion or modification of warranties, stating "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed whenever reasonable as consistent with each other."

The Commissioner has found a promise to repair the transmission from the agreement of April 6, 1976, and a failure to do so. The reverse side of this document, in reference to used vehicles, disclaims any warranty "unless such exceptions are specifically mentioned, in writing, on the face of the order." Such is the case the Commissioner found here. Exhibit D, dated April 10, 1976, further disclaiming warranties cannot remove an express warranty created at the time of the April 6 agreement.

This Court is unable to agree with the conclusion that failure to repair the transmission as agreed is not a breach of an express warranty. While there is a difference in the testimony as to what the parties intended by the reference to "gear shift linkage" and "complete

out work", the Commissioner has found a promise to fix the transmission. The testimony of Martin, (Tr. p. 39, 40, 41, 63, 64) relating to conversations on April 6, 1978, relating to the transmission explain or supplement what "gear shift linkage" was stated to include. The Commissioner has accepted that testimony. Its acceptance is in accord with section 8.2-202.

It is true that the "Installment Sale Contract" of April 8, 1976, excludes all warranties except those expressly contained in the document. (Plt. Ex. C.) There are no warranties in that document. However, the April 6, 1976, agreement (Plt. Ex. B) Standard RV Retail Buyers Contract was the contract between the parties. The April 8 agreement cannot take away what the parties agreed to on April 6. That is a part of the deal.

McGeorge having breached the express warranty, Martin would have a right to reject the vehicle within a reasonable time. Section 8.2-601, 8.2-602. Martin then had the remedies allowed under 8.2-711 and 8.2-715. His only evidence of damages is the money paid out by him. This includes the down payment of $2,171.50 (Ex. B, Ex. C, Tr. p. 42); payments of $79.50 and $25.00 on stereo repair and a TV antenna. (Def. Ex. 1, Def. Ex. 2, Tr. p. 48, 66, 67) and the first payment of $227.80 on the deferred purchase price. (Plt. Ex. C, Tr. p. 79, 89, 90). No other damages have been proven. Payments for the stereo and TV antenna were not requested in the bill.

My views, then, are that there is no fraud, but there is a breach of warranty. This, however, is not the same thing alleged in the Bill of Complaint.

Counsel are requested to express their views, with authorities, as to the result to be reached based on the above observations.

January 10, 1979

Your comments of October 16 and November 22 to my letter of September 29, 1978, have been read and considered.

As previously indicated, it appears to me that a breach of an express warranty relating to the transmission has been found. V. C. § 8.2-313. As I read the Commercial Code this allows the buyer to "rightfully reject" or "justifiably revoke acceptance." V. C. § 8.2-711. 67 Am. Jur. 2d, *Sales*, sect. 722. Rules relating to rejec-

tion are found in V. C. §§ 8.2-601 and 8.2-602. Rules relating to revocation are in V. C. §§ 8.2-607 and 8.2-608. While it is not required that any nonconformity substantially impair value before there can be a rightful *rejection*, McGeorge argues that nonconformity must substantially impair value before there can be a justifiable *revocation of acceptance*. § 8.2-608(1). See 67 Am. Jur. 2d, *Sales*, sect. 387, 710, and 17 A.L.R. 3d 1105.

This raises the question of whether Martin rejected the vehicle or revoked acceptance of the vehicle. He did, in addition to making a down payment and signing a note for the balance, take possession for a period of three or four weeks. Tr. p. 42-49.

This taking possession was with the agreement that certain repair work was to be done when parts became available. These were relatively minor, (Tr. p. 45, 125, 126, 156, 157, 166, 167, Plt. Ex. 4), relating to the windshield, a door step and riveting a hole where the TV antenna came out. When the vehicle was brought back for this work in May 1976, Martin left it with the defendant for repair of the transmission. The vehicle remained in the possession of McGeorge thereafter. Martin removed his license plates on or about July 2, 1976, when he remained dissatisfied.

Section 8.2-606 states what constitutes acceptance. Taking possession of the vehicle, making a down payment and entering into an agreement relating to payment of the balance are acts done by Martin which are inconsistent with ownership in McGeorge. Under § 8.2-606(1)(c) this is acceptance. It is an acceptance in accord with Section 8.2-607(2), as it was on the reasonable assumption that nonconformity would be seasonably cured, but it is nevertheless an acceptance.

This brings § 8.2-608 into play. This section permits revocation of acceptance of an article "whose nonconformity substantially impairs its value to (the buyer)." A number of cases found in 17 A.L.R. 3d 1105, particularly in the supplement, deal with this. As I read those cases, I find it necessary to conclude that Martin has not shown that the nonconformity substantially impairs the value to him. See *Rozmus* v. *Thompson Lincoln-Mercury*, 224 A.2d 782; *Overland Bond* v. *Howard*, 292 N.E.2d 168; *Stamm* v. *Wilder Travel Trailers*, 358 N.E.2d 382; *McGilbray* v. *Scholfield Winnebago*, 561 P.2d 832; *Asciolla* v. *Manter Oldsmo-*

*bile*, 370 A.2d 270; *Jorgensen* v. *Pearsall*, 545 P.2d 1382; *Bergenstock* v. *LeMay's G. M. C.*, 372 A.2d 69.

The prevailing rule as it appears in several of the above cases is to the effect that a right to revoke acceptance of a motor vehicle does not arise from every breach of warranty. To justify revocation of acceptance, the defect must substantially impair the value of the vehicle to the buyer. While this is a subjective impairment of value, the buyer must prove substantial impairment to himself. His personal belief is not enough.

The defect in this case relates to the transmission and the operation of the vehicle in going up grade. (Tr. p. 46, 80, 81, 82). There is also testimony that the vehicle had no passing gear, (Tr. p. 45-46, 170), but there is no evidence that this particular model is supposed to have a passing gear. (Tr. p. 81, 184).

The Commissioner found a failure of McGeorge to repair the transmission as agreed, but held "there has been no breech (sic) of warranty which would entitle the plaintiff to the recession (sic) of the contract." He then cited *Marshall* v. *Oldsmobile*, 207 Va. 972 at 979, where it is stated that the person seeking rescission must show a breach in a material way which results in a total or substantial failure of consideration. While *Marshall* was not decided under the U.C.C., section 8.2-608 requiring substantial impairment of value before there can be a revocation of acceptance is consistent with that comment.

Under the evidence here, it does not appear that Martin has proven that the transmission problem substantially impaired the value of the vehicle to him. Consequently, he may not revoke his acceptance. As Martin cannot justifiably revoke acceptance, he does not have the remedies of § 8.2-711. He is entitled to the remedies under § 8.2-714 and § 8.2-715.

As to § 8.2-714, that permits recovery of the difference in value at the time of acceptance of the vehicle as it was and the value of the vehicle if it has been as warranted. There is no evidence on that point.

As to § 8.2-715, incidental and consequential damages are permitted.

Incidental damages include expenses reasonably incurred in inspection, transportation and other reasonable expense incident to the delay. Considering the number of times Martin came from Louisa to McGeorge's relating

to this matter and found the vehicle still not in condition to be picked up, he is entitled to compensation. His home is 44 miles away. (Tr. p. 53-4). He made three trips in April, on the 6th, 8th and 10th, and another half-dozen thereafter. (Tr. p. 49). The first two would be required in any event. He is entitled to mileage of 88 miles for 7 trips at $.15 per mile. This amounts to $92.40. In addition, an allowance of $10.00 per trip for his time is not unreasonable.

Consequential damages include his expense relating to the stereo (Tr. p. 7, 67) and refund for the TV antenna. (Tr. p. 67-68). These total $104.50. This amount was tendered to Martin but declined in 1976. (Tr. p. 67-69).

Upon full consideration, in my view the report of the Commissioner should be confirmed. There was a sufficient allegation of breach of warranty and there was such a breach. For reasons stated, Martin is not entitled to rescission, but he is entitled to incidental and consequential damages of $266.90.

The fee of the Commissioner will be charged equally to each party. Counsel are to see that payment to the Commissioner is made.